RUSSELL J. CLANTON, CA SBN 152229
RUSSELL J. CLANTON & ASSOCIATES
1139 H Street, Suite 1
Arcata, CA 95521
Telephone: 707-825-6587
Facsimile:  707-825-6588

RANDOLPH E. DAAR, CA SBN 88195
PIER 5 LAW OFFICES
3330 Geary Blvd 3fl East
San Francisco, CA 94118
Telephone: 415-986-5591
Facsimile: 415-421-1331

Attorneys for Defendant
JUDSON ALLEN STIGLICH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUDSON ALLEN STIGLICH,<br><br>Defendant.<br>_____/ | No.  3:18-CR-00086-001 SI<br><br>DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE (18 U.S.C. § 3551(A))<br><br>Date: December 7, 2018<br>Time: 11:00 a.m.<br>Courtroom: 1, 17th Fl., San Francisco |

## STATEMENT OF FACTS

### A.    Statement of the Offense

Mr. Stiglich pled guilty on December 5, 2017 to Counts One and Three of the Indictment, pursuant to a written plea agreement.  Count One alleged possession with the intent to distribute a Schedule II controlled substance, to wit, 50 grams and more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(B).  This charge carries a five year mandatory minimum sentence of imprisonment.  Count Three alleged possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  This charge carries a five year mandatory consecutive sentence of imprisonment.

The factual basis of the plea agreement specifies that:

> On December 7, 2017, law enforcement officers executed a search warrant at my home in Eureka, California. In my bedroom, officers found a .357 revolver loaded with four rounds of Winchester ammunition, 202 grams of 100% pure ice methamphetamine, $2409.00 in cash, and drug distribution paraphernalia, including a digital scale with methamphetamine residue. Officers found the revolver concealed in the same place as the digital scale with methamphetamine residue. Officers found the methamphetamine concealed in the same place as the cash and my wallet. I knowingly possessed all of these items.

> Law enforcement officers also executed a search warrant on my cellular phone, which revealed text messages that I sent and received. In the weeks leading up to December 7, 2017, I sent text messages to drug customers to set up drug transactions. I also sent text messages to a drug supplier in which I discussed my debt to the drug supplier. At the time that law enforcement searched my home on December 7, 2017, I was a drug dealer. I intended to sell some or all of the 202 grams of ice methamphetamine found in my home to other people. I possessed the loaded .357 revolver to protect myself, my drugs, my money, and to otherwise further my drug dealing.

> (Plea Agreement at p. 3, ¶2.)

Under the plea agreement, the total offense level is 31. (Plea Agreement at p. 5:3.) This includes a two-level enhancement for possession of a dangerous weapon, pursuant to U.S.S.G. § 2D1.1(b)(1). However, the Presentence Report (hereinafter, "PSR") finds the two-level enhancement inapplicable, given the conviction as to Count Three (18 U.S.C. § 924(c)). (PSR at p. 7, ¶ 25.) The PSR thus fixes the total offense level at 29. The PSR states that Mr. Stiglich has a criminal history score of thirteen (category VI). (PSR at p. 12, ¶ 45.) The corresponding Guideline range for Count One is therefore 151-188 months. (PSR at p. 23.)

## B.   History and Characteristics of Mr. Stiglich

Mr. Stiglich had what he described as a "great" childhood. (PSR at p. 14, ¶¶ 53-54.) However, his older brother suffers from severe depression, attempted suicide on several occasions, and has a criminal record. (PSR at p. 14, ¶ 55.) Mr. Stiglich resided with his brother in 2017, and told Probation that "he worried about his brother's mental health condition", and

"was adamant that there was no way his brother was going to take his life on [Mr. Stiglich's] watch." (Id.)

Unfortunately, at a very young age, Mr. Stiglich started down a path that would destroy his life, and lead to the present circumstances.  He began smoking marijuana in the sixth grade (around the age of eleven), and was using it every other day by junior high.  (PSR at p. 16, ¶ 66.) Mr. Stiglich began drinking alcohol at the age of fourteen, and admits that "alcohol has always been an issue."  (PSR at p. 15, ¶ 65.)  Mr. Stiglich first used methamphetamine at the age of fourteen, and by his early 20s, was using it "every other day."  (PSR at p. 16, ¶ 66.)  In his 30s he was using daily, and by 2015, smoking a gram a day.  (Exhibit A, Humboldt County Probation Report, at p. 6:15-19.)

Mr. Stiglich attended a thirty-day drug treatment program in Humboldt County circa 2011-2012 and again in 2014, and also participated in Narcotics Anonymous and Alcoholics Anonymous.  (PSR at p. 16, ¶¶ 68-69.)  His family "remains 'super supportive' of him but they struggle to understand why he is unable to quit using drugs."  (PSR at p. 14, ¶ 56.)

Mr. Stiglich also struggles to understand why he has not been able to maintain sobriety. After four drug-related arrests, an incident in 2015 resulted in a state prison commitment (discussed below).  Mr. Stiglich was sober during his incarceration, but relapsed into a dangerous pattern of using methamphetamine and selling drugs to support his addiction.  His parents wrote a letter to the Court, ending with: "We will always be here for support for Judson.  Addiction is life long work.  It is with heavy hearts to write [sic]."  (Exhibit D.)

Mr. Stiglich was arrested on the instant offense on December 7, 2017.  He has a daughter who was born in late March of 2018.

> The defendant was in custody when his daughter was born and explained that "it tears [him] up" to not be a part of her life.  He added that having a child has changed his outlook on life and motivated him, even more than the significant sentence he faces in this case, to get his life on track.

(PSR at p. 14, ¶ 57.)

Mr. Stiglich plans to remain drug-free upon his release, and find a career that allows him to support himself. Remaining sober is his "number one goal". Mr. Stiglich "has concerns about returning to the Eureka area as that is where he has spent most of his life and where most of his addiction-related struggles occurred." (PSR at p. 15, ¶ 60.)

Since the instant arrest, Mr. Stiglich has earned his GED and high school diploma through "Five Keys Schools and Programs". Mr. Stiglich requested that his sentencing be continued in order to obtain both of these credentials, which he now has. The undersigned has not yet received documentation of these accomplishments, but attached as Exhibit E, collectively, is a "Certificate of Participation" dated June 7, 2018, and an undated "Unofficial Transcript".

While Mr. Stiglich was in local custody on the present charges, he availed himself of all available programs in the Humboldt County Correctional Facility. See Exhibit F, Letter of Vanessa Vrtiak, Program Coordinator. One of the classes that Mr. Stiglich completed was "Motivational Enhancement Therapy Class":

> The class met weekly and explored emotional blockages that may have led to anti-social behavior. Judson regularly shared and always had an open heart. He was a leader in the class and encouraged the other inmates to be open and honest….I believe that Judson is remorseful for his actions and deserves another chance to be a contributing member of our community….

(Exhibit F.)

**C.**   **Criminal History**

1.   On May 5, 2003 Mr. Stiglich was convicted of a misdemeanor DUI, for which he received probation. No criminal history points are assigned for this offense.

2.   On April 28, 2010, Mr. Stiglich was sentenced to three years of probation and 189 days in jail for felony possession of a controlled substance, and misdemeanor resisting arrest, in Humboldt County Superior Court Docket CR0906208. Mr. Stiglich suffered two probation

violations, on December 15, 2010, and May 31, 2013, for which he was sentenced to 30 days in jail and 180 days in jail, respectively.  The felony was reduced to a misdemeanor on March 6, 2018.  Probation assigns three points for this conduct.  (PSR at p. 8, ¶ 38.)

3.   On the same date (April 28, 2010), Mr. Stiglich was sentenced to three years of probation and 189 days in jail for grand theft, a felony, in Humboldt Superior Court Docket CR0906581.  Mr. Stiglich suffered two probation violations, on August 31, 2011, and February 1, 2012, for which he was sentenced to 180 days in jail and 90 days in jail, respectively.  Probation assigns three points for this conduct.  (PSR at p. 9, ¶ 39.)

4.   On May 31, 2013, Mr. Stiglich was sentenced to three years of probation for felony possession of a controlled substance, in Humboldt County Superior Court Docket CR1301647.  Probation assigns one point to this offense.  (PSR at pp. 9-10, ¶ 40.)

5.   On December 3, 2015, Mr. Stiglich received a fine for misdemeanor possession of a controlled substance, in Humboldt County Superior Court Docket CR1402173.   Probation assigns one point to this offense.  (PSR at p. 10, ¶ 41.)

6.   Mr. Stiglich was convicted of felon in possession of a firearm (Count One); possession for sale of marijuana (Count Two); felony receipt of stolen property (Count Three); and felony possession for sale of a controlled substance (Count Four), all of which occurred on January 8, 2015.  On December 3, 2015, Mr. Stiglich was sentenced to eight months in prison as to Count One (consecutive); four years in prison as to Count Two; eight months in prison as to Count Three (consecutive); and eight months prison as to Count Four (consecutive), in Humboldt County Superior Court Docket CR1500151.  Probation assigns three points to this conduct.

The charges arose from a situation in which Mr. Stiglich shot his girlfriend's brother in self-defense, followed by the service of a search warrant at Mr. Stiglich's home.  The Humboldt County District Attorney charged the shooting as a violation of Penal Code section 192(a), voluntary manslaughter.  (See Exhibit B, First Amended Information.)  However, this was one of

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the counts dismissed, pursuant to a negotiated disposition that resolved all charges for a stipulated state prison term of six years.  (See Exhibit A, Humboldt County Probation Report.)

> It was determined that victim Robinson had appeared at defendant's residence drunk and angry.  He was apparently upset with defendant and Robinson's his [sic] sister, Jennifer Robinson, who is defendant's girlfriend.  At one point, while in the house, victim Robinson shoved defendant with both hands.  As Jennifer Robinson walked victim Robinson out of the house, he made a statement that he was going to get his gun.  While Jennifer Robinson and victim Robinson were outside, defendant opened the garage door.  Defendant and victim Robinson engaged in further confrontation in the garage.  During the confrontation, victim Robinson was fatally shot.

> (Exhibit A at pp. 2-3.)

Stacey Eads, Humboldt County Deputy District Attorney, submitted a letter to the Humboldt County Probation Department, which stated, in pertinent part, that:

> As noted at the time of Mr. Stiglich's plea, the charge of committing the voluntary manslaughter of Ryan Robinson was dismissed based upon the evidence that would be presented at trial.  Specifically, it was apparent that it was very unlikely the People would meet the burden of proving beyond a reasonable doubt that Mr. Stiglich's killing of Mr. Ryan Robinson was not justified.  However, it is also apparent that had Mr. Stiglich not been engaging in the sale and distribution of methamphetamine and marijuana, and in possession of a firearm, this tragedy would not have happened.  Investigation following the tragic death of Ryan Robinson on January 8, 2015, revealed that Mr. Stiglich was in unlawful possession of a stolen .45 caliber pistol, approximately 5 grams of methamphetamine, and 11 pounds of processed marijuana.  All of these circumstances factored into the ultimate tragedy that resulted.  Therefore, Mr. Stiglich must be held accountable and committed to serve his sentence at the California Department of Corrections for his crimes.

> (Exhibit A1, at p. 2.)

Defense counsel believes that the 2015 shooting was a major factor in the government's decision to remove Mr. Stiglich from state court and prosecute him in this forum.  Information regarding this incident was not included in the draft PSR.  On October 12, 2018 (the day that the parties' objections to the draft PSR were due), the government requested that Probation supplement the criminal history section "with descriptions of the nature of defendant's prior crimes."  (See Exhibit C.)  The government provided copies of police reports that same day, and

stated: "In particular, the government believes that a detailed description of defendant's 2015 offense, currently set forth in Paragraph 42, will assist the Court in its ultimate sentencing determination."  (Exhibit C.)

**D.    Probation's Recommendation**

The Probation Officer recommends a sentence of 180 months custody (120 months as to Count One plus 60 months consecutive as to Count Three), to be followed by five years of supervised release.  (PSR at p. 23.)  Probation further recommends that Mr. Stiglich participate in the Bureau of Prisons Residential Drug Abuse Treatment Program (RDAP).  (PSR at p. 25.)

The Probation Officer notes that Mr. Stiglich's "criminal history is not extensive in terms of volume, but it is serious in nature."  (PSR at p. 24.)   Mr. Stiglich "has three convictions for Possession of a Controlled Substance (two felonies and one misdemeanor) and one conviction for Possession of Drugs for Sale (marijuana and methamphetamine)."  (Id.)  Mr. Stiglich "sustained a conviction for Grand Theft in which he grabbed a female victim by her hair and throat."  (Id.)

> He has been in possession of weapons and ammunition in connection with his possession of drugs on more than one occasion.  However, the most serious of his prior conduct involved his taking the life of another person even though he was never actually convicted of that specific charge.  His actions in that case bring to light the danger inherent when both firearms and drugs are present.  Of additional concern is that the defendant was only out of prison for a short time (less than six months) before he returned to personal use, selling drugs, and being in possession of dangerous weapons.  His actions in the instant offense suggest that his prior term of incarceration did little to deter his criminal conduct or impress upon him the serious consequences that could result from possessing guns and distributing drugs.

> (Id.)

Probation concluded that the aggravating factors "appear to outweigh any factors in mitigation."  (Id.)

> However, when looking at the totality of the sentence the defendant faces in this case, a variance down to 180 months which includes a below guideline sentence of 120 months plus [a] mandatory consecutive sentence of 60 months is sufficient.

> The defendant has only served one prior prison sentence, a sentence of 56 months, for which he only served two and a half years.  A sentence of 180 months (15 years) will most certainly impress upon the defendant the seriousness of his conduct in the instant offense.

> (Id.)

Probation further found that Mr. Stiglich "has a life-long substance addiction issue and it appears that he has had few meaningful opportunities at rehabilitation."  (PSR at p. 21, ¶ 101.) Probation suggests that the Court may wish to consider the need for correctional treatment in imposing a sentence below the advisory guideline range, pursuant to 18 U.S.C. § 3553(a)(1). (Id.)

### E.   <u>Defense Request</u>

Mr. Stiglich submits that a total sentence of ten years of imprisonment (60 months as to Count One plus 60 months consecutive as to Count Three) is sufficient, but not greater than necessary, to comply with the specific purposes set forth at 18 U.S.C. § 3553(a)(2).

Mr. Stiglich further submits that a variance is appropriate pursuant to 18 U.S.C. § 3552(a), because his criminal history category under the Guidelines overstates his actual "criminal history".

## <u>ARGUMENT</u>

### I.

**IT IS THE SENTENCING COURT'S DUTY TO IMPOSE A SENTENCE SUFFICIENT, BUT NOT GREATER THAN THAN NECESSARY TO COMPLY WITH THE SPECIFIC PURPOSES SET FORTH AT 18 U.S.C. § 3553(a)(2).**

The Sentencing Guidelines are but one factor to be considered at sentencing.  *See Kimbrough v. United States*, 552 U.S. 85 (2007).

A district court may not "presume that a sentence within the applicable Guidelines range is reasonable."  *See Nelson v. United States*, 555 U.S. 350, 352 (2009).

Nor is the district court required to find "extraordinary circumstances" in sentencing outside of the Guidelines. *See Gall v. United States*, 552 U.S. 38, 47 (2007).

Title 18, United States Code Section 3553(a)(1) requires the court, in determining the particular sentence to be imposed, to consider "the nature and circumstances of the offense and the history and characteristics of the defendant."

In part, Title 18, United States Code Section 3553(a)(2) requires the court to consider "the need for the sentence imposed":

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner....

***

(6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct....

A court may consider the fact that a defendant will serve the mandatory minimum sentence imposed under 18 U.S.C. § 924(c) in calculating the sentence for the predicate offense. *See Dean v. United States*, 137 S.Ct. 1170, 197 L.Ed.2d 490 (2017).

## II.

### THE COURT COULD FIND THAT MR. STIGLICH'S CRIMINAL HISTORY CATEGORY OVERSTATES <u>HIS CRIMINAL HISTORY, AND MERITS A VARIANCE.</u>

The plea agreement states that "[t]he parties have reached no agreement" regarding Mr. Stiglich's Criminal History Category.  (Plea Agreement at p. 4, ¶ 7, lines 21-22.)

The sentences imposed on April 28, 2010 in Humboldt County Superior Court Docket Numbers CR0906208 and CR0906581 were for conduct that occurred two weeks apart

(December 15, 2009 and December 29, 2009, respectively). (PSR at p. 8, ¶ 38 – p. 9, ¶ 39.) The conduct included felony possession of a controlled substance (later reduced to a misdemeanor), and misdemeanor resisting arrest. The second case was for grand theft (felony). Mr. Stiglich suffered two probation violations in each case. The PSR assigns a total of six criminal history points for both matters.

On May 31, 2013, Mr. Stiglich was sentenced to three years of probation for felony possession of a controlled substance, in Humboldt County Superior Court Docket CR1301647.[1] Probation assigns one point to this offense. (PSR at pp. 9-10, ¶ 40.)

On December 3, 2015, Mr. Stiglich received a fine for misdemeanor possession of a controlled substance, in Humboldt County Superior Court Docket CR1402173. Probation assigns one point to this offense. (PSR at p. 10, ¶ 41.)

The PSR assigns eight criminal history points for the foregoing convictions, plus another three points for the 2015 convictions which resulted in a state prison sentence (described in the foregoing Statement of Facts). The PSR adds another two points because Mr. Stiglich was on post-offense community supervision (formerly known as parole) at the time of the instant offense, pursuant to USSG § 4A1.1(d), for a total of thirteen points. (PSR at p. 12, ¶¶ 43-45.)

Without the eight points for the prior offenses, which were either misdemeanors or not deemed serious enough to warrant a state prison sentence, Mr. Stiglich would have five criminal history points, the difference between Criminal History Category III versus VI. As to Count One of the Indictment, with a total offense level of 29, as reflected in the PSR, the guideline range for Category III is 108-135 months, versus a range of 151-188 months for Category VI.

While the plea agreement constrains Mr. Stiglich from requesting a "downward departure under the Sentencing Guidelines", he nevertheless reserves "the right to seek a downward

---

[1] The passage of Proposition 47 in 2014 eliminated felony punishment for simple possession of a controlled substance; such offenses are generally now classified as misdemeanors.

DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE - 10

variance based on the factors set forth in 18 U.S.C. § 3553(a)."  (Plea Agreement at p. 4:18-20.)

Overstated criminal history "has always been a permissible basis for a departure *or a variance.*"

*See United States v. Jimenez-Gutierrez,* 491 F.3d 923 (8th Cir. 2007) [Emphasis added.]

### III.

**NOTWITHSTANDING 18 U.S.C. § 3661, IT WOULD BE UNFAIR FOR THE COURT TO PUNISH MR. STIGLICH FOR THE VOLUNTARY MANSLAUGHTER CHARGE THAT WAS DISMISSED IN STATE COURT IN 2015.**

Title 18 U.S.C. § 3661 reads as follows:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

(18 U.S.C. § 3661.)

For instance, "an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof". *See United States v. Mercado*, 474 F.3d 654 (9th Cir. 2007), quoting *United States v. Watts*, 519 U.S. 148, 149 (1997) (per curiam).  The Supreme Court held in *Watts* "that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *See id.*

The Supreme Court held in *Witte v. United States*, 515 U.S. 389 (1995) that the Double Jeopardy Clause did not bar a prosecution for conduct that had provided the basis for an enhancement of the defendant's sentence in a prior case:

> [C]onsideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted." Rather, the defendant is 'punished only for the fact that the present offense was carried out in a manner that warrants increased punishment ....'

> *United States v. Booker*, 543 U.S. 220, 241 (2005).

Defense counsel believes that the 2015 shooting was a major factor in the government's decision to remove Mr. Stiglich from state court and prosecute him in this forum.  A reliable source informed defense counsel that the Department of Justice has a policy (whether written or not) that a defendant charged in state court with a drug and firearm offense, who had previously been responsible for a death that occurred, would be charged federally.  The undersigned has not been able to confirm this information.

In any event, information regarding the 2015 shooting was not included in the draft PSR. On October 12, 2018 (the due date for objections to the draft PSR), the government requested that Probation supplement the criminal history section "with descriptions of the nature of defendant's prior crimes."  (See Exhibit C.)  The government provided copies of police reports that same day, and stated: "In particular, the government believes that a detailed description of defendant's 2015 offense, currently set forth in Paragraph 42, will assist the Court in its ultimate sentencing determination."  (Exhibit C.)

Probation complied with the government's request.  The final PSR states that Mr. Stiglich "has been in possession of weapons and ammunition in connection with his possession of drugs on more than one occasion."  (PSR at p. 24.)

> However, the most serious of his prior conduct involved his taking the life of another person even though he was never actually convicted of that specific charge.  His actions in that case bring to light the danger inherent when both firearms and drugs are present….

(PSR at p. 24.)

The charges arose from a situation in which Mr. Stiglich shot his girlfriend's brother in self-defense, followed by the service of a search warrant at Mr. Stiglich's home.  The Humboldt County District Attorney charged the shooting as a violation of Penal Code section 192(a), voluntary manslaughter.  (See Exhibit B.)  However, this was one of the counts dismissed,

1

2

pursuant to a negotiated disposition that resolved all charges for a stipulated state prison term of

six years.  (See Exhibit A.)

3

4

5

6

7

8

> It was determined that victim Robinson had appeared at defendant's residence drunk and angry.  He was apparently upset with defendant and Robinson's his [sic] sister, Jennifer Robinson, who is defendant's girlfriend.  At one point, while in the house, victim Robinson shoved defendant with both hands.  As Jennifer Robinson walked victim Robinson out of the house, he made a statement that he was going to get his gun.  While Jennifer Robinson and victim Robinson were outside, defendant opened the garage door.  Defendant and victim Robinson engaged in further confrontation in the garage.  During the confrontation, victim Robinson was fatally shot.

9

> (Exhibit A at pp. 2-3.)

10

11

Stacey Eads, Humboldt County Deputy District Attorney submitted a letter to the

Humboldt County Probation Department, which stated, in pertinent part that:

12

13

14

15

16

17

> As noted at the time of Mr. Stiglich's plea, the charge of committing the voluntary manslaughter or Ryan Robinson was dismissed based upon the evidence that would be presented at trial.  Specifically, it was apparent that it was very unlikely the People would meet the burden of proving beyond a reasonable doubt that Mr. Stiglich's killing of Mr. Ryan Robinson was not justified.  However, it is also apparent that had Mr. Stiglich not been engaging in the sale and distribution of methamphetamine and marijuana, and in possession of a firearm, this tragedy would not have happened….Therefore, Mr. Stiglich must be held accountable and committed to serve his sentence at the California Department of Corrections for his crimes.

18

19

> (Exhibit A1, at p. 2.)

20

21

22

23

24

Thus, the six-year state prison term took into account the death of Mr. Robinson, and Mr.

Stiglich was punished accordingly.  Notwithstanding 18 U.S.C. § 3661 and the relevant case law,

and acknowledging that Mr. Stiglich was prohibited from possessing a firearm or ammunition in

2015, under the circumstances it would be unfair to further punish Mr. Stiglich for defending

himself in his home.

25

26

27

28

## IV.

### A SENTENCE OF SIXTY MONTHS ON COUNT ONE, PLUS A CONSECUTIVE SENTENCE OF SIXTY MONTHS ON COUNT THREE, IS APPROPRIATE FOR MR. STIGLICH.

Title 18, United States Code Section 3553(a)(1) requires the court, in determining the particular sentence to be imposed, to consider "the nature and circumstances of the offense and the history and characteristics of the defendant."

The nature and circumstances of the offense and the history and characteristics of Mr. Stiglich are set forth above.

18 U.S.C. § 3553(a)(2) requires the court to consider "the need for the sentence imposed":

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner....

***

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct....

Here, a total sentence of ten years (120 months) would be sufficient, but not greater than necessary, pursuant to 18 U.S.C. § 3553(a)(2).

///

///

///

## <u>CONCLUSION</u>

Mr. Stiglich asks the Court to impose the mandatory minimum sentence of 120 months custody, to be followed by five years of supervised release.  Consistent with the PSR, he further asks the Court to recommend the Residential Drug Abuse Program ("RDAP") to allow him to address his substance abuse problem.

Dated: November 29, 2018

Respectfully submitted,

/s/ _____
RUSSELL J. CLANTON
Attorney for Defendant
JUDSON ALLEN STIGLICH